IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOHN BAX, | ) | |
|     Petitioner, | ) | C.A. No. 06-296 Erie |
| | ) | |
|     v. | ) | |
| | ) | District Judge McLaughlin |
| H.J. MARBERRY, Warden, | ) | Chief Magistrate Judge Baxter |
| FCI McKean, | ) | |
|     Respondent. | ) | |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

**I.   RECOMMENDATION**

It is respectfully recommended that the Petition for Writ of Habeas Corpus filed by Petitioner, John Bax, be denied, and that a certificate of appealability be denied.

**II.   REPORT**

Petitioner is a federal inmate incarcerated at the Federal Correctional Institution, McKean ("FCI McKean"), located in Bradford, Pennsylvania. He contends that the Federal Bureau of Prisons (the "BOP") erred in computing his sentence. For relief, he seeks credit for all time he spent in state custody that the BOP did not credit to his federal sentence.

    **A.   Relevant Facts and Procedural History**

On May 28, 1993, Petitioner and other individuals were apprehended by officers of a drug task force as they were leaving a motel in or around York County, Pennsylvania. (Ex.[1] 2 at ¶ 8(a)). Petitioner was taken into custody on three outstanding New York felony fugitive warrants. (Id.) On July 27, 1993, a federal indictment was issued charging him with committing federal drug offenses between January 1993 and May 1993. (Id. at ¶ 8(b)).

On August 2, 1993, the Supreme Court of Queens County, New York, sentenced Petitioner to three concurrent state sentences of five to ten years. (Id. at ¶ 8(c)). On September 3, 1993,

---

[1] All Exhibit citations are to those documents attached to the Response (Doc. # 10).

1

while Petitioner was serving his state sentence, the United States Marshals Service ("USMS") obtained physical custody of him from New York authorities pursuant to a federal writ of habeas corpus *ad prosequendum*. (Id. at ¶ 8(d)). On September 8, 1993, federal authorities charged him with "Conspiracy to Possess with Intent to Manufacture and Distribute in Excess of 50 Grams of Cocaine and Cocaine Base," in violation of 21 U.S.C. § 846 (Count I), and "Manufacturing, Distributing, and Possessing with Intent to Manufacture and Distribute Cocaine and Cocaine Base," in violation of 21 U.S.C. § 841(a) (Count II). (Id. at ¶ 8(e)).

The Honorable William W. Caldwell of the United States District Court for the Middle District of Pennsylvania presided over Petitioner's trial. On October 14, 1993, the jury found him guilty of Count I and acquitted him of Count II. (Id. at ¶ 8(f)). On February 16, 1994, Judge Caldwell sentenced him to "a term of 286 months on [C]ount I" to be followed by a 5 year term of supervised release. (Ex. 2b at pp. 2-3). He specifically recommended the Petitioner's "sentence run concurrently with any state sentence the defendant might be serving." (Id. at p. 2).[2]

After his federal sentencing, the USMS returned Petitioner to New York authorities. Several years later, on February 17, 2000, the state authorities released him to a federal detainer. (Ex. 2 at ¶ 8(i)). The New York Department of Corrections informed the BOP that it had credited Petitioner's state sentence with the 66 days served in official detention from May 28, 1993 (the date he was taken into custody on the outstanding state warrants) until his state sentence commenced on August 2, 1993. (Id. at 8¶(j)).

Petitioner arrived at USP Allenwood on March 30, 2000 and the BOP computed his federal sentence on that date. (Ex. 2 at ¶ 8(k)). His projected release date is currently set at October 9,

---

[2] In the "Statement of Reasons," Judge Caldwell noted:

> The sentence is within the guideline range that exceeds 24 months, and the sentence is imposed for the following reason(s): A sentence slightly above the minimum of the guideline range would appear to adequately address the sentencing objectives and take into account the defendant's aggravating role.

(Ex. 2 at ¶ 8(g)). Two days later, on February 18, 1994, Judge Caldwell amended the sentencing order. The amended Judgement and Commitment Order reflected the following change: "The Court determines that the amount of crack cocaine involved is at least 5 grams but less than 50 grams." (Ex. 2c). In all other respects, the amended Judgement and Commitment Order was unchanged from the original.

2

2014.

In his petition for writ of habeas corpus, Petitioner contends that the BOP has erred in its sentence computation and that he is entitled to additional credit against his federal sentence for time he served on his state sentence.

**B.** **Subject Matter Jurisdiction**

A challenge to a federal sentence *as imposed* must be made under 28 U.S.C. § 2255 and filed with the federal district court that convicted and sentenced the petitioner. In cases such as this, where the petitioner is challenging the BOP's *execution* of his federal sentence, the habeas petition is properly brought under 28 U.S.C. § 2241. Bennett v. Soto, 850 F.2d 161 (3d Cir. 1988); Gomori v. Arnold, 533 F.2d 871 (3d Cir. 1976).

**C.** **Exhaustion**

A federal prisoner seeking habeas relief under 28 U.S.C. § 2241 first must exhaust administrative remedies before bringing his or her claim to federal court. United States v. Wilson, 503 U.S. 329, 334-35 (1992); Moscato v. Federal Bureau of Prisons, 98 F.3d 757 (3d Cir. 1996). The BOP is the agency charged with administering the federal prison system, Wilson, 503 U.S. at 334-35, and for all federal prisoners challenging BOP determinations, the initial venue is the administrative process. The BOP codified its Administrative Remedy Program in 28 C.F.R. Part 542, which provides detailed procedures and guidelines for federal prisoners to seek administrative review of any aspect of their confinement. Respondent concedes that Petitioner has exhausted his available administrative remedies with the BOP on the issue that is the subject of this Petition. (Doc. # 10 at p. 5).

**D.** **Discussion**

The authority to calculate a federal prisoner's period of incarceration for the sentence imposed, and to provide credit for time served, is delegated to the Attorney General, who exercises it through the BOP. See, e.g., Wilson, 503 U.S. at 331; 28 C.F.R. § 0.96. In addressing any

3

sentencing computation issue, a district court must consider: (1) when the federal sentence commenced; and, (2) the extent to which the petitioner may be entitled to credit for time spent in custody prior to commencement of the sentence. 18 U.S.C. § 3585; Chambers v. Holland, 920 F.Supp. 618, 621 (M.D. Pa.), aff'd, 100 F.3d 946 (3d Cir. 1996).

**(1) Petitioner's Federal Sentence Commenced on February 16, 1994**

18 U.S.C. § 3585(a) governs the date a federal sentence commences. It states:

(a) Commencement of sentence. – A sentence to a term of imprisonment commences on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served.

Because the statute provides that a sentence commences when an inmate is produced or received *for service of his federal sentence*, the BOP will not commence a sentence earlier than the date on which it is imposed. (Ex. 2 at ¶ 10); see also BOP Program Statement 5880.28, Sentence Computation Manual, Chapt. I.3, Page 13.[3] Thus, a federal sentence cannot commence prior to the date it is pronounced, even if made concurrent with a sentence already being served. See also, United States v. LaBeille-Soto, 163 F.3d 93, 98 (2nd Cir. 1998) ("We see nothing in [§ 3585(a)] to indicate that the court is permitted to order that the sentence be deemed to have commenced on an earlier date. Indeed, the determination of the precise date on which a sentence begins appears to have been intended to be a ministerial decision that depends on the timing of the defendant's arrival at the appropriate place with respect to the sentence that is to be served, and we have held that after a defendant is sentenced, it falls to the BOP, not the district judge, to determine when a sentence is deemed to commence[.]") (internal quotations and brackets omitted); Shelvy v. Whitfield, 718 F.2d 441, 444 (D.C. Cir. 1983) ("[A] federal sentence made concurrent with a sentence already being

---

[3] The BOP's most current policies regarding sentence computation is set forth in BOP Program Statement 5880.28, Sentence Computation Manual, which became effective on July 19, 1999. Also relevant are the BOP policies regarding the designation of state institutions for service of a federal sentence. Those policies are currently set forth in Program Statement 5160.05, which became effective on January 16, 2003. Although both of these specific Program Statements became effective after Petitioner's federal sentence was imposed in 1994, they articulate– in parts relevant to this proceeding – policies of the BOP that have been in place for many years, and which were set forth in either prior versions of the Program Statements or in other formats.

4

served does not operate in a 'fully concurrent' manner.  Rather, the second sentence runs together with the remainder of the one then being served."); DeMartino v. Thompson, No. 96-6322, 1997 WL 362260 at *2 (10th Cir. July 1, 1997) ("Logically, a [federal sentence] cannot commence prior to the date it is pronounced, even if made concurrent with a sentence already being served." (quoting United States v. Flores, 616 F.2d 840, 841 (5th Cir.1980)).

      Judge Caldwell directed that Petitioner's federal sentence run concurrent with his state sentence.  It is not disputed that on the date Judge Caldwell sentenced Petitioner – February 16, 1994 – Petitioner was: (1) in primary state custody and "on loan" to federal authorities pursuant to a writ of habeas corpus *ad prosequendum*; and, (2) that while on loan to federal authorities he was serving his state undischarged term of imprisonment, which had been imposed by the Supreme Court of Queens County, New York, on August 2, 1993.

      For inmates in Petitioner's circumstance, the USMS will, after federal sentencing, return the inmate to the state in satisfaction of the writ of habeas corpus *ad prosequendum* and the BOP normally will designate the state facility where the inmate is serving his state sentence "as the official detention facility at which the sentence is to be served."  (Ex. 2f); see also 18 U.S.C.§ 3621(b).  The BOP's designation allows the federal sentence to commence.  The BOP may make a "nunc pro tunc" designation of the state facility in order to ensure that time lost in administrative processing is not passed on to the inmate.  This "nunc pro tunc" designation also allows the federal sentence to commence upon imposition.  See Program Statement 5160.05, Designation of State Institution for Service of Federal Sentence, Page 8; Program Statement 5880.28, Sentence Computation Manual, Chapt. I.3 at Page 13.

      The BOP followed its procedures in Petitioner's case.  It designated the state facility where Petitioner was serving his state sentence as the official detention facility at which he was to commence service of his federal sentence.  (Ex. 2f).  Further, the BOP computed Petitioner's federal sentence to have commenced on February 16, 1994 – the date Judge Caldwell imposed it. As a result, the BOP commenced Petitioner's sentence on the earliest date that the sentence could commence.

5

### (2) Petitioner Is Not Entitled to Prior Custody Credit

Because the BOP commenced Petitioner's sentence on the earliest date that his sentence could have commenced, his request for time served in official detention prior to February 16, 1994 must be treated as a request for prior custody credit under 18 U.S.C. § 3585(b). That statute provides:

> (b) Credit for prior custody. – **A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences** –
>
> (1) as a result of the offense for which the sentence was imposed; or
>
> (2) as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed;
>
> **That has not been credited against another sentence.**

18 U.S.C. § 3585(b) (emphasis added). The intent of the last clause of § 3585(b) is to prohibit double sentencing credit situations. Wilson, 503 U.S. at 337. Simply put, under § 3585(b), the BOP may not grant prior custody credit for time that has been credited against another sentence. See, e.g., Rios v. Wiley, 201 F.3d 257, 272 (3d Cir. 2001).

In this case, all time Petitioner served in official detention from May 28, 1993 (the date he was taken into custody on the outstanding state warrants) until February 16, 1994 (the date his federal sentence was imposed and commenced), was credited against the sentences imposed by the State of New York. (Ex. 2 at ¶ 8(j)). Therefore, the BOP was statutorily precluded from granting Petitioner with prior custody credit under 18 U.S.C. § 3585(b) for any time he spent in official detention between those dates. See, e.g., Rios, 201 F.3d at 271-76.

The BOP did, however, award Petitioner 66 days of "qualified nonfederal presentence credit" pursuant to Willis v. United States, 438 F.2d 923 (5th Cir. 1971). (Ex. 2 at ¶ 8(l), ¶ 12; Ex. 2g). The BOP will award such credit when the following two conditions exist: (1) the non-federal and federal sentences are concurrent; and (2) the raw Effective Full Term ("EFT")[4] date of the

---

[4] The raw EFT is the full term date of a sentence without reference to prior custody credit or good conduct time. (Ex. 2 at ¶ 8(l), ¶ 12; Ex. 2g).

nonfederal sentence is the same as or earlier than the raw EFT of the federal sentence. If these conditions exist, the time considered for treatment as Willis credit is the time spanning the date the federal offense conduct concluded until the date the first sentence commences, whether federal or nonfederal. In this case, the state raw EFT (ten year term commencing August 2, 1993, for a state raw EFT of August 1, 2003) is earlier than the federal raw EFT (23 year, 10 month sentence, commencing February 16, 1994, for a federal raw EFT of December 15, 2017). Therefore, Willis applied, and the BOP credited Petitioner's federal sentence for the 66 days he served in official detention from May 28, 1993 (the date Petitioner's federal offense concluded) until August 2, 1993 (the date his state sentence commenced). (Ex. 2 at ¶ 8(l), ¶ 12; Ex. 2g).

### (3) Ruggiano v. Reish Does Not Support Petitioner's Request for Habeas Relief

To support his argument that the BOP erred in computing his sentence, Petitioner relies on Ruggiano v. Reish, 307 F.3d 121 (3d Cir. 2002). That case does not support his request for habeas relief.

At the time Petitioner's federal sentence was imposed, a federal sentencing court had the authority under the Sentencing Guidelines to adjust a defendant's term of imprisonment for time already served on a concurrent state sentence. United States Sentencing Commission, Guidelines Manual, § 5G1.3(c) (West Nov. 1993). When a sentencing court exercised that authority, it imposed what is sometimes referred to as a "retroactively concurrent" sentence. Ruggiano, 307 F.3d at 128-30; see also Allan v. Johns, 205 Fed.Appx. 934 (3d Cir. 2006). That term does not mean, however, that the sentencing court directed that the defendant's federal sentence commence on the date the previously-imposed state sentence commenced. As set forth above, the BOP, and not the federal sentencing court, determines the date upon which a federal sentence commences. See, e.g., id. at 126; LaBeille-Soto, 163 F.3d at 98. Rather, when a federal sentencing court imposed a "retroactively concurrent" sentence, the court awarded a sentence reduction under the Sentencing Guidelines designed to account for time already served on the concurrent state sentence. Id.

For example, in Ruggiano, the defendant pleaded guilty in federal court to charges of

7

racketeering.  Id. at 123.  At that time, he was serving a 2-4 year sentence on an unrelated state conviction for gambling, and he had already served 14 months on that state sentence.  Id.  In announcing Ruggiano's term of imprisonment on his federal racketeering offenses, the federal sentencing court stated that Ruggiano is "to be imprisoned for a term of 112 months.  Sentence imposed to run concurrent with State sentence.  Defendant to receive credit for time served."  Id. at 125.  The BOP interpreted the sentencing court's statements granting Ruggiano with "credit for time served" on his state sentence as merely a nonbinding recommendation which the BOP was at liberty to, and did, ignore.  Id.  Ruggiano, however, argued in his subsequent § 2241 petition that the sentencing court actually adjusted his federal sentence length for time served on his state sentence pursuant to the Sentencing Guidelines.  Id. at 126.  Specifically, he argued that "he was sentenced to 112 months *minus* the time served on the state conviction (14 months), and it was from this base (98) months that the BOP should have calculated the point at which his sentence would be satisfied."  Id. (emphasis added).  As relief, Ruggiano sought credit for the 14 months served on his state sentence before his federal sentence was imposed.

The United States Court of Appeals for the Third Circuit Court agreed with Ruggiano.  In doing so, it did not hold that the sentencing court "commenced" Ruggiano's sentence on the date his state sentence commenced.  Indeed, the Third Circuit Court noted that the BOP is the entity that has the "statutory duty" to "calculate[ ] the beginning and end dates of Ruggiano's sentence."  Id. at 126.  Rather, the Third Circuit Court held that the sentencing court actually sentenced Ruggiano to a term of imprisonment of 112 months minus the 14 months he already had served in state custody prior to the commencement of his federal sentence – resulting in a total term of imprisonment of 98 months.

In this case, in contrast to Ruggiano, Petitioner has not demonstrated that the BOP misconstrued the length of the term of the sentence imposed.  The term of the sentence articulated by Judge Caldwell was clear: "a term of 286 months on [C]ount I."  (Ex. 2b; Ex. 2c).  Further, his recommendation that Petitioner's federal sentence "run concurrently with any state sentence," with no reference to past credit, also evidences his intent to sentence Petitioner to a total term of imprisonment of 286 months.  Accord Allan, 205 Fed.Appx. at 936-37.  There is no indication that

8

he intended to adjust Petitioner's federal sentence under § 5G1.3(c) of the Sentencing Guidelines. (See Ex. 2 at ¶ 14; Ex. 2b; Ex. 2c; see also Doc. # 1, App. A).

### D. Certificate of Appealability

Section 102 of the Antiterrorism and Effective Death Penalty Act (28 U.S.C. § 2253 (as amended)) codified standards governing the issuance of a certificate of appealability for appellate review of a district court's disposition of a habeas petition. Amended Section 2253 provides that "[a] certificate of appealability may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right." Where the federal district court has rejected a constitutional claim on its merits, "the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong[.]" Szuchon v. Lehman, 273 F.3d 299, 312 (3d Cir. 2001) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)). Federal prisoner appeals from the denial of a Section 2241 habeas corpus proceeding are not governed by the certificate of appealability requirement. United States v. Cepero, 224 F.3d 256, 264-65 (3d Cir. 2000); 28 U.S.C. § 2253(c)(1)(B).

## III. CONCLUSION

For the foregoing reasons, it is respectfully recommended that the Petition for Writ of Habeas Corpus be denied, and that a certificate of appealability be denied.

In accordance with 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72.1.4(B), the parties are allowed 10 days from the date of service to file written objections to this Report and Recommendation. Any party opposing the objections shall have 7 days from the date of service of objections to respond thereto. Failure to file timely objections may constitute a waiver of any appellate rights. See Nara v. Frank, 488 F.3d 187 (3d Cir. 2007).

/s/ Susan Paradise Baxter
SUSAN PARADISE BAXTER
CHIEF UNITED STATES MAGISTRATE JUDGE

Dated: January 14, 2008